
**EDWARD L. HENDERSON,**

Plaintiff,

vs.   No. **CIV 01-0469** MCA/LFG

**AETNA LIFE INSURANCE COMPANY,**
a/k/a **AETNA US HEALTHCARE,**

Defendant.

## MEMORANDUM OPINION AND ORDER

**THIS MATTER** is before the Court on Plaintiff's Motion to Remand filed on June 19, 2001 (Docket No. 8) and Defendant's Motion to Dismiss filed on June 25, 2001 (Docket No. 12). The Court, having considered the removal notice and the motions and memoranda submitted by the parties, and being apprized of the applicable law, concludes that Defendant's motion is well taken. Plaintiff, however, will be granted leave to amend his complaint.

### I. BACKGROUND

Plaintiff was an employee of Penske Corporation (Penske). Plaintiff avers that he purchased a long-term disability benefit policy (coverage) from Defendant through his employer, Penske, around December 1996. On or about April 18, 1998, when Plaintiff became disabled and suffered a compensable loss, Defendant provided insurance coverage to Plaintiff. Plaintiff alleges that Defendant admitted



its liability to pay monthly long-term benefits under the policy from October 1998. Plaintiff also alleges that on either September 5, 2000, or November 1, 1999, Defendant discontinued payments to Plaintiff, even though Plaintiff continued to be disabled. Plaintiff contends that in addition to refusing to pay him the long-term disability benefits due under the policy, Defendant harassed and intimidated him in an attempt to force him to abandon his claim. Plaintiff alleges that Defendant attempted to abandon Plaintiff's claim on the basis of oral and written misrepresentation of the terms of the policy.

On March 22, 2001, Plaintiff filed a seven-count complaint against Defendant in the Second Judicial District Court of the State of New Mexico to recover damages for insurance bad faith. In his complaint, Plaintiff asserted the following claims: breach of covenant of good faith and fair dealing; violations of the New Mexico Unfair Insurance Practices Act, N.M. Stat. Ann. §§ 59A-16-1 through -30 (Michie 2000); violations of the New Mexico Unfair Practices Act, N.M. Stat. Ann. §§ 57-12-1 through -22 (Michie 2000); intentional infliction of emotional distress; fraud; negligent representation; and unreasonable delay. Plaintiff sought actual damages, including related interest and expenses; exemplary and punitive damages, including statutorily-allowed treble damages; pre- and post-judgment interest; and attorney fees and costs.

On April 27, 2001, Defendant filed a notice of removal, removing the action to federal court under 28 U.S.C. § 1441 (2000). On June 19, 2001, Plaintiff filed a motion to remand, contending that the action raised solely states law claims not

preempted by federal law. As a jurisdictional ground for its removal, Defendant alleged a federal question under 28 U.S.C. § 1331 (2000), specifically that Plaintiff's action is governed by the Employment Retirement Income Security Act (ERISA) 29 U.S.C. §§ 1001 -1461 (2000). Additionally, while not explicitly invoking 28 U.S.C. § 1332(a) (2000), Defendant asserted in its removal notice and in its response to Plaintiff's remand motion that the parties were of diverse citizenship. The civil case cover sheet filed by Defendant also lists the basis of the Court's jurisdiction as diversity. On June 25, 2001, Defendant filed a motion to dismiss for failure to state a claim for which relief may be granted, asserting that Plaintiff failed to state in his complaint any cause of action or claim under ERISA and that the state law claims he had raised were all preempted by ERISA. The Court addresses the two motions concurrently because whether ERISA preempts Plaintiff's state law claims is dispositive of both Plaintiff's motion to remand and Defendant's motion to dismiss. The Court reviews only the exhibits attached to the removal notice and not those attached to any of the parties' subsequent pleadings.

## II. **STANDARDS OF REVIEW**

### A. **Motion to Remand**

"Only state-court actions that originally could have been filed in federal court may be removed to federal court by the defendant. Absent diversity of citizenship, federal-question jurisdiction is required." Caterpillar, Inc. v. Williams, 482 U.S. 386, 392 (1987). Removal statutes are to be strictly construed

in considering whether removal jurisdiction is proper on a motion to remand. See Fajen v. Found. Reserve Ins. Co., 683 F.2d 331 (10th Cir. 1982). All doubts must be resolved against removal and in favor of remand. See id.; Martin v. Franklin Capital Corp., 251 F.3d 1284, 1289-90 (10th Cir. 2001). As the party invoking federal jurisdiction, Defendant bears the burden of establishing that the requirements for such jurisdiction have been met. See id. at 1290. Federal jurisdiction must exist and be affirmatively established at the time of the removal notice. See Laughlin v. Kmart Corp., 50 F.3d 871, 873 (10th Cir. 1995).

### B. Motion to Dismiss under Fed. R. Civ. P. 12(b)(6)

Granting a motion to dismiss for failure to state a claim "is a harsh remedy which must be cautiously studied, not only to effectuate the spirit of the liberal rules of pleading but also to protect the interests of justice." Ramirez v. Okla. Dep't of Mental Health, 41 F.3d 584, 586-87 (10th Cir. 1994) (internal quotations omitted). When ruling on a Rule 12(b)(6) motion, a court must construe the plaintiff's complaint liberally and accept all well-pleaded allegations in the complaint as true. See Albright v. Oliver, 510 U.S. 266, 268 (1994); Tonkovich v. Kan. Bd. of Regents, 159 F.3d 504, 510 (10th Cir. 1998). A claim may be dismissed "only if it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations." Hishon v. King & Spalding, 467 U.S. 69, 73 (1984).

## III. DISCUSSION

### A. Diversity Jurisdiction

By failing to allege 28 U.S.C. § 1332(a) as a basis for federal jurisdiction in its notice of removal, Defendant did not properly invoke diversity jurisdiction. Even if Defendant had properly invoked diversity jurisdiction in its removal notice, Defendant failed to properly support such jurisdiction. See Martin, 251 F.3d at 1289-90; Huffman v. Saul Holdings Ltd. P'ship, 194 F.3d 1072, 1079 (10th Cir. 1999); Laughlin, 50 F.3d at 873. Diversity jurisdiction requires diversity of citizenship and an amount in controversy exceeding $75,000. See 28 U.S.C. § 1332(a). The amount in controversy requirement is not satisfied on the face of Plaintiff's complaint or in Defendant's removal notice. Further, Defendant failed to make any assertion as to the amount in controversy or point to supporting material in the record. Therefore, the Court cannot find federal jurisdiction on the basis of diversity of citizenship. See Laughlin 50 F.3d at 873 ("The amount in controversy is ordinarily determined by the allegations of the complaint, or, where they are not dispositive, by the allegations in the notice of removal."); cf. Hanna v. Miller, 163 F. Supp. 2d 1302, 1305 (D.N.M. 2001) ("Where neither [the complaint nor removal notice] suffices, the court may also consider other relevant materials in the record."). Defendant has failed to establish the jurisdictional amount. See Martin, 251 F.3d at 1290-93. Therefore, in determining the propriety of Defendant's removal of this action, the Court will

consider only Defendant's allegation of federal question jurisdiction under 28 U.S.C. § 1331.

### B. Federal Question Jurisdiction

Federal jurisdiction only exists if the suit is an action "arising under the Constitution, laws, or treaties of the United States." 28 U.S.C. § 1331. Under the well-pleaded complaint rule, whether or not an action arises under federal law is determined solely by a plaintiff's statement of his own case in his complaint. See Louisville & Nashville R.R. Co. v. Mottley, 211 U.S. 149, 152 (1908). The plaintiff is generally the master of the action and may choose to prevent removal by not pleading an available federal claim. See Caterpillar, Inc., 482 U.S. at 392. If the complaint shows that it is based on state law, then a defendant's assertion of a defense based on federal law, such as federal preemption, generally is not a proper basis for removal. See Metro. Life Ins. Co. v. Taylor, 481 U.S. 58, 63 (1987); Louisville & Nashville R.R. Co., 211 U.S. at 152.

The Supreme Court, however, has recognized a narrow exception or corollary to the well-pleaded complaint rule known as the complete preemption doctrine. "Congress may so completely pre-empt a particular area that any civil complaint raising this select group of claims is necessarily federal in character." See Taylor, 481 U.S. at 63-64. Such a complete preemption manifests Congress' intent to make the claims removable. See id. at 66. Although there is no federal claim on the face of the complaint, by operation of the doctrine of complete preemption, the state law claim may be completely displaced by the federal claim.

See Franchise Tax Bd. v. Constr. Laborers Vacation Trust, 463 U.S. 1, 23-24 (1983). When a federal cause of action completely preempts a state cause of action, any complaint that comes within the scope of the federal cause of action necessarily arises under federal law. See id. at 24. The state law causes of action essentially are "replaced" with a federal cause of action. See Schmeling v. Nordam, 97 F.3d 1336, 1342 (10th Cir. 1996).

### C. ERISA

State actions within the scope of ERISA generally are within the "select group of claims" that are completely preempted and thus removable under 28 U.S.C. § 1441(a). See Schmeling, 97 F.3d 1340 (citing Taylor, 481 U.S. at 65-66); Env't Remediation Holding Corp. v. Talisman Capital Opportunity Fund, L.P., 106 F. Supp. 1088, 1093 (D. Colo. 2000). In order for the removal jurisdiction to be proper in ERISA cases, two initial requirements must be met. First, the plaintiff's cause of action must fall within the "sweep" of the preemptive statute (ERISA) and not be excepted from preemption by the saving clause. See Taylor, 481 U.S. at 64. Second, the plaintiff's cause of action must fall within the scope of Sections 502(a) and (e) of ERISA. See id. Consequently, if Plaintiff's claims are within the preemptive sweep of ERISA and are within the scope of Sections 502 (a) and (e), they are not only preempted by ERISA, but also removable to federal court.

Congress' intention in enacting ERISA was to ensure that a uniform body of law would be applied to ERISA-regulated plans through the development of "a

federal common law of rights and obligations" and the prevention of reference to varying state laws. See Pilot Life Ins. Co. v. Dedeaux, 481 U.S. 41, 56 (1987). Section 502(a) of ERISA grants the federal court jurisdiction over "[a] civil action . . . brought--by a participant . . . to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan[.]" 29 U.S.C. § 1132(a) and (e). ERISA provides extensive regulation of employee welfare benefit plans, including disability plans. 29 U.S.C. §§ 1001-02; Pilot Life Ins. Co., 481 U.S. at 44. In doing so, ERISA preempts state law claims relating to such plans. See 29 U.S.C. § 1144(a) (ERISA "shall supercede any and all State laws insofar as they may now or hereafter relate to any employee benefit plan."). ERISA's saving clause, however, excepts from preemption state laws that regulate insurance. See 29 U.S.C. § 1444(b)(2)(A); Metro. Life Ins. Co. v. Mass., 471 U.S. 724, 733 (1985) ("While . . . ERISA broadly pre-empts state laws that relate to an employee-benefit plan, that pre-emption is substantially qualified by an 'insurance saving clause.'").

The first inquiry the Court must undertake is whether the disability policy at issue is an employee "welfare benefit plan" under 29 U.S.C. § 1002(1). See Peckham v. Gem Stone Mut. of Utah, 964 F.2d 1043, 1047 (10th Cir. 1992). An employee welfare benefit plan is defined as:

> any plan, fund, or program which was heretofore or is hereafter established or maintained by an employer or by an employee organization, or by both, to the extent that such plan, fund, or program was established or is maintained for the purpose of providing for its participants or their beneficiaries, through the

purchase of insurance . . . or benefits in the event of sickness, accident, disability. . . .

29 U.S.C. § 1002(1).

According to Plaintiff, there is no indication in the policy attached to his complaint that the policy is an ERISA plan. Defendant responds that it is clear from the terms or language of the policy that the policy is an ERISA plan.

For a policy to fall within the scope of ERISA, it must be: "(1) a plan, fund, or program (2) established or maintained (3) by an employer (4) for the purpose of providing health care or disability benefits (5) to participants or their beneficiaries." Sipma v. Mass. Cas. Ins. Co., 256 F.3d 1006, 1009 (10th Cir. 2001) (internal quotations omitted). The third, fourth, and fifth of these criteria are clearly met here. The policy at issue was provided by Plaintiff's employer, Penske, for the purpose of providing disability benefits to its employees, including Plaintiff, a policy participant. Plaintiff in his complaint admits as much. Only the first two criteria, whether the policy at issue is a plan, fund, or program, as defined by ERISA, and whether it is established and maintained, are truly at issue in this case. For the following reasons, the Court concludes that these two criteria are met as well.

### A. ERISA Plan

A policy is an ERISA "plan, fund, or program . . . if from the surrounding circumstances a reasonable person can ascertain the intended benefits, a class of beneficiaries, the source of financing, and the procedures for

receiving benefits." Id. at 1012 (internal quotations omitted). These four criteria can be ascertained from the policy at issue. The intended benefits are disability benefits as evident from the policy, and the procedure for receiving disability benefits is also specified in the policy. Intended beneficiaries are eligible employees of Penske. The source of financing is that Penske, as the policyholder, would pay Defendant the premiums due, with the rate of any employee contribution toward the cost of coverage left to Penske and any required employee contribution deducted from each covered employee's pay. For these reasons, the Court concludes that the disability policy at issue is a "plan" as defined by ERISA.

### B.     Established or Maintained by an Employer

To be covered by ERISA, the policy at issue must not only be a plan, but also have been "established or maintained" by Plaintiff's employer. While an employer need not administer a plan, see id., establishing or maintaining a plan requires more than merely purchasing a policy for employees, see Gaylor v. John Hancock Mut. Life Ins. Co., 112 F.3d 460, 464 (10th Cir. 1997). An important factor in determining whether a plan has been established is whether the employer's purchase of the policy is an expressed intention by the employer to provide benefits on a regular and long-term basis. See id. Substantial evidence of employer establishment of a plan includes "the purchase of a group policy . . . covering a class of employees," id., or an employer's payment of premiums, see Sipma, 256 F.3d at 1012. The policy at issue was a group policy covering a class of employees of Penske, and Plaintiff's employer, Penske, paid the premiums to

Defendant. Thus, the policy appears to be "established or maintained" by Plaintiff's employer.

ERISA's "safe harbor" provision, however, provides an exception that excludes certain group insurance policies from the category of employee welfare benefit plans established or maintained by an employer. See 29 C.F.R. § 2510.3-1(j) (2001); Gaylor, 112 F.3d at 463. In order to fall under the safe harbor provision, a plan must meet all the following four requirements: (1) no contributions are made by the employer; (2) participation is voluntary for the employees; (3) the sole function of the employer is to permit the insurer to publicize the program to employees and to collect premiums through payroll deductions; and (4) the employer receives no consideration in connection with the program. See Gaylor, 112 F.2d at 463. In the present case, the third requirement is not met because Penske was actively involved in management of the policy. As admitted by Plaintiff, Penske was the agent of Defendant and the policy was issued in Penske's name. Further, examination of the policy reveals that Penske had the power to determine the eligible classes of employees for coverage, the termination of the policies for certain classes of employees, and the rate of employee contribution.

As all the requirements were not met in this case, the policy at issue does not fall within the "safe harbor" provision. Therefore, the Court concludes that the policy at issue is "established and maintained" by Plaintiff's employer, Penske, and that all five of the criteria for the existence of an ERISA "employee welfare benefit

plan" are satisfied. Consequently, ERISA applies to Plaintiff's disability insurance policy.

### C. State Laws Relating to ERISA

The Court next must determine whether Plaintiff's state law claims are preempted by ERISA. Plaintiff's state law claims are preempted if the New Mexico laws upon which Plaintiff relies relate to an employee benefit plan within the meaning of ERISA. See 29 U.S.C. § 1144(a). State laws relate to ERISA when they have connection with or reference to the plan and when the claims affect "the relations among the principal ERISA entities—the employer, the plan, the plan fiduciaries, and the beneficiaries." Airparts Co. v. Custom Benefit Servs. of Austin, Inc., 28 F.3d 1062, 1065 (10th Cir. 1994); see Woodworker's Supply, Inc. v. Principal Mut. Life Ins. Co., 170 F.3d 985, 990 (10th Cir. 1999). If the state law claims concern the determination of an employee's eligibility for a benefit and/or the amount of that benefit under a plan, including improper processing of a benefits claim, ERISA preemption is triggered. See Taylor, 481 U.S. at 65-66; Airparts Co., 28 F.3d at 1065. In addition, the Tenth Circuit has identified four causes of action that "relate to" a benefit plan for purposes of ERISA preemption: (1) laws regulating the type of benefits or terms of ERISA plans; (2) laws creating reporting, disclosure, funding, or vesting requirements for ERISA plans; (3) laws providing rules for calculating the amount of benefits to be paid under ERISA plans; and (4) laws and common-law rules providing remedies for misconduct growing out of the administration of ERISA plans. See Airparts Co., 28 F.3d at

1064-65. ERISA, however, does not preempt state claims which only tangentially or remotely involve an employee benefit plan. Such remote claims include pre-plan claims, see Woodworker's Supply, Inc., 170 F.3d at 991-92, and certain medical malpractice or related claims, see Pacificare of Okla., Inc. v. Burrage, 59 F.3d 151, 154 (10th Cir. 1995); Herrera v. Lovelace Health Sys., Inc., 35 F. Supp.2d 1327, 1331-32 (D.N.M. 1999).

There is no allegation in the complaint that any of Plaintiff's claims, including those based on Defendant's alleged misrepresentation and fraud, arise from Defendant's conduct before the policy was in effect. In fact, Plaintiff alleges in his complaint that the policy was in full force and effect at all times material to his allegations. Furthermore, all of the state law claims Plaintiff alleges in his complaint arise from Defendant's denial, withholding, or termination of his disability benefits under the plan. Therefore, the Court concludes that Plaintiff's claims relate to an ERISA plan and fall squarely within the broad parameters of ERISA preemption.

### D. ERISA Saving Clause

The final inquiry is whether any of Plaintiff's claims escape ERISA preemption under ERISA's Saving Clause, 29 U.S.C. § 1144(b)(2)(A), because the claims are grounded on state laws that "regulate[] insurance." Dang v. UNUM Life Ins. Co., 175 F.3d 1186, 1190-91 (10th Cir. 1999).[1] In determining whether a state

---

[1] A New Mexico federal district court previously has concluded that claims under New Mexico law for breach of contract, bad faith, infliction of emotional distress, unreasonable delay, and violations of the New Mexico Unfair Practices and Unfair Insurance Practices

law regulates insurance, a three-step analysis is employed. First, a court applies a "'common sense view of the matter.'" UNUM Life Ins. Co. v. Ward, 526 U.S. 358, 367 (1999); see Pilot Life Ins. Co., 481 U.S. at 50 ("A common-sense view of the word 'regulates' would lead to the conclusion that in order to regulate insurance, a law must not just have an impact on the insurance industry, but must be specifically directed toward that industry."). Next, a court considers three factors "to determine whether the regulation fits within the 'business of insurance,' as that phrase is used in the McCarran-Ferguson Act." 15 U.S.C. §§ 1011-15 (2000); Ward, 526 U.S. at 367 (quoting 15 U.S.C. §§ 1011-15 (2000)). The three factors are: (1) "whether the practice has the effect of transferring or spreading a policyholder's risk;" (2) "whether the practice is an integral part of the policy relationship between the insurer and the insured;" and (3) "whether the practice is limited to entities within the insurance industry." Id. (internal quotations omitted). The McCarran-Ferguson factors are "considerations [to be] weighed" with "[n]one . . . necessarily determinative in itself." Id. at 373 (internal quotations omitted). Finally, a court must consider "the role of the saving clause in ERISA as a whole," Pilot Life Ins. Co., 481 U.S. at 51, including congressional intent behind ERISA's civil enforcement provisions, see Dang, 175 F.3d at 1191.

From a common sense perspective, it could be argued that Plaintiff's claims are not rooted in law limited by New Mexico to the insurance industry. See Ward,

---

Acts are preempted by ERISA. See Nechero v. Provident Life & Accident Ins. Co., 795 F. Supp. 374, 380-81 (D.N.M. 1992). The Nechero court, however, did not explicitly analyze whether such causes of action were saved by 29 U.S.C. § 1144(b)(2)(A).

526 U.S. at 371-72; Pilot Life Ins. Co., 481 U.S. at 50. Plaintiff's claims for violations of the New Mexico Unfair Practices Act, intentional infliction of emotional distress, fraud, and negligent representation are generally available actions based on New Mexico statutory or common law and are not specifically directed at the insurance industry. Plaintiff's claim for violations of New Mexico's Unfair Insurance Practices Act (UIPA), while based on a state law which directly regulates insurance, is a cause of action in New Mexico that is not distinctive or exclusive to the insurance industry, but is available in other contexts and rooted in general principles of New Mexico tort and contract law. Cf. State ex rel. Stratton v. Gurley Motor Co., 105 N.M. 803, 806, 737 P.2d 1180, 1183 (Ct. App. 1987) (concluding that New Mexico's UIPA is not an exclusive remedy under state law). Finally, while Plaintiff's breach of covenant of good faith and fair dealing and unreasonable delay claims are causes of actions generally brought in New Mexico in insurance bad faith claims, see Teague-Strebeck Motors, Inc. v. Chrysler Ins. Co., 1999-NMCA-109, ¶ 87, 127 N.M. 603, 985 P.2d 1183 (citing UJI 13-1701, -1702, -1705 NMRA 1999), they are not claims limited by New Mexico law to insurance cases. Section 55-1-203 imposes good faith duties in the performance of all contractual obligations governed by the Uniform Commercial Code (UCC), and New Mexico law does not prohibit raising bad faith and unreasonable delay claims in non-insurance or non-UCC contexts. See UJI 13-832 cmt. NMRA 2001 (good faith and fair dealing) (whether good faith obligation extends beyond UCC

and insurance context is to be decided by individual trial judges on a case-by-case basis).

Even assuming that Plaintiff's state law claims pass the common sense test, the claims do not sufficiently regulate insurance under the McCarran-Ferguson factors such that they fall within ERISA's saving clause. First, the state statutory provisions or common law on which Plaintiff's claims are based do not have "the effect of transferring or spreading a policyholder's risk," Ward, 526 U.S. at 374 (internal quotations omitted), by, for example, requiring coverage for a specific category, type of disease, or other mandated benefits.[2] See Gaylor, 112 F.3d at 466; cf. Taylor, 471 U.S. at 743 (state law-mandated mental health care benefits spread risk). Plaintiff's bad faith and other related state law claims do not change the terms of the relationship between the insurer and insured; they only declare that the policyholder can obtain punitive damages in certain circumstances when there is a breach of the contract. Thus, the first of the McCarran-Ferguson factors is not met because Plaintiff's state law bad faith claims do not affect premiums or otherwise alter the allocation of risk of either party regarding the loss of long-term disability coverage.

Further, the state statutory provisions or common law at issue do not serve as "an integral part of the policy relationship between the insurer and the

---

[2] New Mexico's UIPA contains provisions which relate to specific medical conditions. E.g., N.M. Stat. Ann. § 59A-16-13.1 (Michre 2000) (craniomandibular and temporomandibular joint disorders). However, these provisions are not at issue here and the Court makes no determination as to whether these provisions satisfy any of the McCarran-Ferguson factors.

insured," Ward, 526 U.S. at 374 (internal quotations omitted), by, for example, creating a mandatory insurance contract term, or otherwise limiting the type of insurance an insurer may sell, see e.g., Dang, 175 F.3d at 1191-92 (Oklahoma law regulates insurer-insured relationship); Lewis v. Aetna U.S. Healthcare, Inc., 78 F. Supp.2d 1202, 1213-14 (N.D. Okla. 1999) (same); Pilot Life Ins. Co., 481 U.S. at 51 (Mississippi bad faith law, even if associated with insurance industry, does not define terms of insurance relationship); Johnston v. Paul Revere Life Ins. Co., 241 F.3d 623, 631 (8th Cir. 2001) (Nebraska statute does not govern or dictate actual content of insurance policies and thus does not add anything substantive to insurer-insured relationship); Brandner v. UNUM Life Ins. Co., 152 F. Supp.2d 1219, 1226-27 (D. Nev. 2001) (Nevada insurance laws impose duties required by other Nevada laws and, therefore, do not change the bargain between the insurer and insured).

Third, only one of Plaintiff's causes of action—his UIPA claim—is clearly "limited to entities within the insurance industry," Ward, 526 U.S. at 375; cf. Brandner, 152 F. Supp.2d at 1226-27 (Nevada's UIPA satisfies third McCarran-Ferguson factor); Chilton v. Prudential Ins. Co., 124 F. Supp.2d 673, 682 (M.D. Fla. 2000) (Florida's unfair insurance trade practices provisions meet third McCarran-Ferguson factor). Plaintiff's other causes of action are not clearly limited to entities within the insurance industry. See Pilot Life Ins.Co., 481 U.S. at 51 (noting that the text of bad faith developed from general principles of tort

and contract law). In balance, Plaintiff's claims do not adequately satisfy the McCarran-Ferguson factors.

Finally, even assuming the McCarran-Ferguson factors weighed in Plaintiff's favor, the Court concludes that the overall purpose of ERISA compels ERISA preemption of Plaintiff's causes of action. See Taylor, 481 U.S. at 54. Permitting Plaintiff's state law claims would result in the allowance of remedies supplemental to those available under Section 502(a) of ERISA, 29 U.S.C. § 1132(a), for insurance benefit denials, improper claim processing, and related actions. Such a result would undermine Congress' goal in enacting ERISA and Congress' intent that ERISA's remedies be exclusive. See Pilot Life Ins. Co., 481 U.S. at 52.

## IV. **CONCLUSION**

Considering the common sense test and the overall purpose of ERISA and weighing the three McCarran-Ferguson factors, the Court concludes that Plaintiff's claims are not saved from ERISA preemption by 29 U.S.C. § 1144(b)(2)(A). Consequently, Plaintiff's action was properly removed to this Court, but his complaint must be dismissed because Plaintiff's state law claims are precluded and ERISA is Plaintiff's exclusive remedy. In the interest of justice and judicial economy, however, Plaintiff will be granted leave to amend his complaint to assert any valid claims he may have under ERISA.

**IT IS, THEREFORE, ORDERED** that Plaintiff's Motion to Remand filed on June 19, 2001 (Docket No. 8) is **DENIED**. Federal jurisdiction is based on federal question, 28 U.S.C. § 1331, and not diversity of citizenship. 28 U.S.C. § 1332(a).

**IT IS FURTHER ORDERED** that Defendant's Motion to Dismiss filed on June 25, 2001 (Docket No. 12) is **GRANTED**. Plaintiff's complaint is dismissed without prejudice.

**IT IS FURTHER ORDERED** that Plaintiff may file an amended complaint within thirty (30) days of the date of service of this Memorandum Opinion and Order.

　　　　　　　　　　　　　　　　　　　　　_____
　　　　　　　　　　　　　　　　　　　　　**M. CHRISTINA ARMIJO**
　　　　　　　　　　　　　　　　　　　　　United States District Judge

Counsel for Plaintiff:
    **Victor Roybal, Jr.**
    **VICTOR ROYBAL, JR., Attorney at Law**
    Albuquerque, New Mexico

Counsel for Defendant:
    **Christopher J. DeLara**
    **Gail Gottlieb**
    **SUTIN, THAYER & BROWNE, PC**
    Albuquerque, New Mexico